UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA )
)
vs. ) Case No.: 21-CR-00645-DLF
)
KEVIN DOUGLAS CREEK )
)

## MEMORANDUM IN AID OF SENTENCING

Kevin Creek, by his attorney, Troy B. Jones, hereby submits the following memorandum in aid of sentencing in this matter. Pursuant to the sentencing factors set forth in 18 U.S.C. §3553(a) as delineated in Rita v. United States, 127 S. Ct. 2456 (2007), Kimbrough v. United States, 128 S. Ct. 558 (2007), Gail v. United States, 128 Ct. 586 (2007) and Nelson v. United States, 555 U.S. 338 (2009), Mr. Creek respectfully requests the Court to impose a sentence of probation and community service. Mr. Creek submits that the requested sentence is "sufficient, but not greater than necessary, to comply with the purposes" set forth in 18 U.S.C. §3553. Sentencing is currently scheduled for May 2, 2022, at 10 a.m., via video, before the Honorable Dabney L. Friedrich. In support of this request, counsel states:

### FACTUAL BACKGROUND

On October 26, 2021, the United States Attorney for the District of Columbia filed a one-count Information charging Kevin Douglas Creek with Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. §111(a)(1).

The criminal conduct charged in the Information occurred on or about January 6, 2021.

On December 1, 2021, the defendant pled guilty to the Information, pursuant to a written plea agreement and Rule 11(c)(1)(B). Under the terms of the plea agreement, a conviction for Count 1 carries a maximum sentence of eight years imprisonment; a term of supervised release of not more than three years, pursuant to 18 U.S.C. §3583(b)(2); a fine of not more than $250,000.00 pursuant to 18 U.S.C. 18 § 3571(b)(3); and an obligation to pay any applicable interest on penalties on fines and restitution not timely made. The defendant also agrees to pay a special assessment of $100.

1

Under the terms of the plea discussions, the parties agree that Mr. Creek's Base Offense Level would be 14 pursuant to § 2A2.2. He would receive a 6 Level Official Victim enhancement pursuant to § 3A1.2. For acceptance of responsibility, he would receive a 3 Level reduction pursuant to § 3E1.1. His adjusted level would be 17 with an estimated Criminal History Category of 1 as he has zero criminal history points. Mr. Creek's estimated Guideline Range sentence is 24 to 30 months.

Based on the 2021 United States Sentencing Guidelines the Offense Level Computation is as follows:

Base Offense Level: The guideline for 18 U.S.C. §111(2)(1) offenses are found in U.S.S.G. § 2A2.4 of the guidelines. That section provides that an offense involving Assaulting, Resisting, or Impeding Certain Officers has a base offense level of 10. U.S.S.G. § 2A2.4(a).

Specific Offense Characteristics: The offense involved physical contact with officers RSE and JCM. Therefore, three levels are added. U.S.S.G. § 2A2.4(b)(1)(A).

Specific Offense Characteristics: A victim sustained bodily injury [to wit: USCP Officer RSE was pushed and kicked by the defendant]. According to U.S.S.G. § 1B1.1, comment, "Bodily injury" means any significant injury, e.g., and injury that is painful and obvious, or is of a type for which medical attention ordinarily would be sought. There has not been any proof or evidence that any victim obtained any significant injury from the defendant. Therefore, two levels should not be added without direct proof. U.S.S.G. § 2A2.4(b)(2).

Adjusted offense Level (Subtotal): Level 15.

Acceptance of Responsibility: The defendant has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by two levels. U.S.S.G. § 3E1.1(a).

Total Offense Level: 11

Based on a total offense level of 11 and a criminal history category of I, the guideline imprisonment is 8 moths to 14 months.

The defendant agrees with the Probation Office's guideline calculations that differs from those as provided in the plea agreement. Specifically, the Probation Office correctly applied U.S.S.G. § 2A2.4 [Obstructing or Impeding Officers] because the facts and circumstances of the offense did not meet the definition of "Aggravated Assault" as required by U.S.S.G. § 2A2.2, comment. Specifically, "Aggravated Assault" means a felonious assault that involves (A) a

2

dangerous weapon with intent to cause bodily injury (i.e. not merely to frighten) with that weapon; (B) serious bodily injury; (C) strangling, suffocating, or attempting to strangle or suffocate; (D) and intent to commit another felony. Because the offense level was calculated under U.S.S.G. § 2A2.4, was less that 16, the defendant is eligible for only a two-level reduction for Acceptance of Responsibility under U.S.S.G. § 3A1.1. Moreover, U.S.S.G. § 2A2.4 expressly prohibits the application of U.S.S.G. § 3A1.2 [Official Victim] unless the offence level is determined under U.S.S.G. § 2A2.2. Thus, that provision was not applicable.

## ARGUMENT

Notwithstanding the agreements stated in the plea agreement, it should be noted, however, that the Guidelines are not mandatory, but merely advisory. The factors identified in 18 U.S.C. §3553(a) support Mr. Creek's request that he be sentenced below the applicable guideline range or statutory sentence. The Court must consider the Guidelines, along with the other factors set forth in 18 U.S.C. §3553(a).

A district court should begin by correctly calculating the applicable Guidelines range. The Guidelines are the starting point and initial benchmark but are not the only consideration. After permitting both parties to agree for a particular sentence, the judge should consider all of 18 U.S.C. §3553(a)'s factors to determine whether they support either parties proposal. She may not presence that the Guidelines ranges is reasonable but must make an individualized assessment based on the facts presented. If she decides on an outside-the-Guidelines sentence, she must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variation. She must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

In reviewing the sentencing, the appellate court must first ensure that the district court made no significant procedural errors and then consider the sentence's substantive reasonableness under an abuse-of-discretion standard, taking into account the totality of the circumstances, including the extent of a variance from the Guidelines range, but give due deference to the district court's decision that the §3553(a) factors justify the variance. United States v. Gall, 128 S. Ct. 586 (2007). (Citing United States v. Booker, 543 U.S. 220, 260 (2005)). These factors include: "The nature and circumstances of the offense and the history and characteristics of the defendant…the kinds of sentences available…the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and…the need to

provide restitution to any victims of the offense." 18 U.S.C. §3553(a). Pursuant to 18 U.S.C. §3661, No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence. After considering all of the factors set forth in §3553(a), the Court must impose a sentence "that reflect[s] the seriousness of the offense, promote[s] respect the law, provide[s] just punishment, afford[s] adequate deterrence, protect[s] the public, and effectively provide[s] the defendant with needed educational or vocational training and medical care." Id. At 765 (citing 18 U.S.C. §3553(a)(2)). Section 3582 of Title 18 provides: [t]he Court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation. (Emphasis added).

With that limitation and considering all of the purposes of sentencing, the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph [(a)](2) [of 3553]." 18 U.S.C. §3553(a). As the Supreme Court recently confirmed, courts "no longer…tied to the sentencing range indicated in the Guidelines." Cunningham v. California, 127S. Ct. 856, 867 (2007). Instead, courts are "obliged to 'take account of the range along with the sentencing goals Congress enumerated in the [Sentencing Reform Act] at 18 U.S.C. §3553(a)." Id. (Quoting Booker, 543 U.S. at 259, 264); see also United States v. Pickett, 475 F.3D 1351 (D.C. Cir. 2007) ("The Court's remedial opinion. [in Booker] required the district court to treat the Guidelines. As advisory only and as simply one factor. To be considered. In sentencing."). A review of all of the applicable factors set forth in §3553(a) demonstrates that a sentence of imprisonment within the Guideline range or the statutory maximum would be greater than necessary to meet the sentencing purposes set forth in §3553(a).

## Factors of Mr. Creek that the Court Should Consider under §3553(a)(1)
### A. Nature of the Offense

While Mr. Creek. Committed a very serious crime, he has expressed. Extreme regret and remorse for his actions. Mr. Creek agreed to waive his right to file any pre-trial motions and plead guilty in a timely fashion – thereby saving scarce judicial resources.

4

As the United States Probation Office stated in the Sentencing Recommendation. "There is no evidence suggesting Mr. Creek was among the rioters who destroyed or stole government property, or within the crowd that unlawfully entered the US Capitol on the date; however, his conduct cannot be characterized as minimal. Specifically, the defendant has pled guilty to committing a physical assault on two law enforcement officers who were protecting the US Capital building and its occupants from the large crowd of rioters, many of whom ultimately entered and caused damage to the building". Also, Mr. Creek assisted a law enforcement officer who was in distress among the crowd of protesters to safety.

### B. Characteristics of the Defendant

As set forth in the PSR, Mr. Creek is a 47-year-old, U. S. Veteran. He has been married to his wife, Jurgita, for nineteen years. They have two children together, Sofi Nicole Creek age 18 and Max Haley Creek, age 13.

Mr. Creek proudly served in the United States Marine Corp., from 1995 – 1999 on active duty and four years after active duty in the reserves. He was Honorably Discharged from the USMC in August 1999, with the rank of Corporal [E-4].

Kevin does not belong to any right-wing extremist groups, and he does not follow them on social media.

Mr. Creek agrees with the conduct described in the PSR Statement of Offense. The Government has agreed that stipulated statement that Mr. Creek did in fact come to the aid of a female officer who was in distress among the crowd of protesters and escorted the female officer to safety to the capitol steps. The female officer identity is unknown to the defendant.

Mr. Creek's facial recognition was inconclusive in the photos and videos. Mr. Creek identified himself to the FBI in his initial meetings prior to the government bringing charges against him.

Not to downplay the seriousness of Kevin conduct, but a review of the evidence shows his conduct not to be so sinister as portrayed by the indictment. Out of human nature and instinctively, Kevin intervened with two officers and assaulted them with no injuries. He also came to the aid of another female officer in distress. Mr. Creek conduct was not to harm anyone but to render aid to anyone in need. Having been a Marine that had defended our country, Kevin is ashamed about what he has done. Kevin's father was a law enforcement officer and soldier, and he knows to respect authority figures. Kevin accepts full responsibility for his actions and wished that this had

never happened. Kevin in thankful that neither officer was injuries from his conduct and assault. Kevin has two children, and he feels that he let them and his wife Jurgita down.

Military records will be attached as a supplement to this memorandum. Letters in support of Mr. Creek will also be attached.

## Defendant's Sentencing Proposal

Based on all of the foregoing reasons, Mr. Creek now respectfully requests the Court to impose of a period of probation with community service. He has been living at home working in Atlanta, Georgia. He has had no violations of his pretrial release conditions. Counsel for Mr. Creek understands that this sentencing proposal request for Mr. Creek is unusual considering his Guideline exposure.

In the event that the Court is not inclined to give Mr. Creek probation, we would ask that the Court follow the Sentencing Recommendation and Sentencing Format of the United States Probation Office and the probation office suggested language in the Sentencing Format. That Mr. Creek be sentenced to serve a term of imprisonment of 6 month and 12-month term of supervised release, in addition to a $100 special assessment.

Kevin has a wife, two children and a house with a mortgage. We would ask the Court to use its discretion and fashion a sentence which takes into account the hoped-for downward departure pursuant to 18 §3553(a) and the opportunities permitted in "Zone B" of the U.S.S.G. 5C1.1.

U.S.S.G. 5C1.1 authorizes:

> (c)   If the applicable guideline range is in Zone B of the Sentencing. Table, the minimum term may be satisfied by…
>
> (1) a sentence of imprisonment; or
>
> (2) a sentence of imprisonment that includes a term of supervised release with a condition that substitutes community confinement or home detention according to the schedule in subsection (e), provided that at least one month is satisfied by imprisonment; or
>
> (3) a sentence of probation that includes a condition or combination of conditions that substitute intermittent confinement, community confinement, or home detention for imprisonment according to the schedule in subsection (e).
>
> (e)   Schedule of Substitute Punishments:

(1) One day of intermittent confinement in prison or jail for for one day of imprisonment. (each 24 hours of confinement is credited as one day of intermittent confinement, provided, however, that. One day shall be credited for any calendar day during which the defendant is employed in the community. And confined during all remaining hours);

(2) One day of community confinement (residence in a community treatment center, halfway house, or similar residential facility) for one day of imprisonment.

(3) One day of home detention for one day of imprisonment.

This particular U.S.S.G. Section (5C1.1(e)) is typically called the "one for one" sentence, which means that for each day of imprisonment, a defendant is required to serve a corresponding day of either community confinement or home detention, with work release privileges. This is the type of sentence Mr. Creek would be requesting so that he could do work and support his family.

As noted in the Presentence Report, Mr. Creek has zero criminal history points. The Sentencing Commission has found that less than 5 percent of defendants like Mr. Creek who fall into Criminal History Category I sustain a new conviction within two years of release. See U.S.S.C., Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines Ex.3 (May 2004), available at www.UCSC.gov/publicat/Recidivism_General.pdf. Thus Mr. Creek is unlikely to recidivate.

In determining whether to incarcerate Mr. Creek, the Court shall consider, among other factors, that his age also substantially decreases his likelihood of recidivism. Mr. Creek will be 47 years old at sentencing. "Recidivism Tate's decline relatively consistently as age increases" the likelihood of recidivism. See U.S.S.C., Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines. Ex.#a ((May 2004), *available at* www.UCSC.gov/publicat/Recidivism_General.pdf.At12. Thus, again, Mr. Creek is unlikely to recidivate.

In determining whether to incarcerate Mr. Creek, the Court. Shall consider, among other factors, the expected costs to the government of any imprisonment, supervised release, or probation component of the sentence. 18 U.S.C. §3572(a)(6) and U.S.S.C. 5E1.2(d)(7). The resent advisory from the Administrative Office of the United States Courts. Suggested that the Court use

an annual cost of $44,256 for imprisonment, an annual cost of $35,760 for community confinement, and an annual cost of $4,452 for supervision.

## CONCLUSION

**WHEREFORE,** in light of all of the arguments. Presented and such other reasons that may be discussed at the sentencing hearing in this matter, Mr. Creek respectfully submits sentencing him a term of imprisonment not greater than necessary to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and effectively provide Mr. Creek with. Needed educational or vocational training and medical care." 18 U.S.C. §3553(a). Based upon the defendant's current financial situation, a fine, in addition to restitution, we ask the Court not to recommend; however, Mr. Creek agrees with the recommendation of the United States Probation Office that a 60-hour community service component in lieu of a fine.

Mr. Creek further prays of this Court that if he is to be allowed to voluntary surrender as he is compliant with the conditions of his release, has appeared for all scheduled Court appearances, and in not an apparent flight risk or a danger to the community, 18 U.S.C. 3143(a)(2).

Respectfully submitted,

/s/ Troy B. Jones
Troy B. Jones, Esquire #
P.O. Box 2308
418 S. Gay Street Suite 204
Knoxville, Tennessee 37901
(865) 456-5901

CERTIFICATE OF SERVICE

I hereby certify that all. Counsel of record have been served via the ECF, email or fax this 26 day of April 2022.